DILLINGHAM & MURPHY, LLP
DENNIS J. KELLY (SBN 191414)
Email:  djk@dillinghammurphy.com
BROOKE S. PURCELL (SBN 260058)
Email:  bsp@dillinghammurphy.com
225 Bush Street, 6th Floor
San Francisco, CA  94104-4207
Telephone: (415) 397-2700
Facsimile:  (415) 397-3300

Attorneys for Respondents
HORWITZ & ASSOCIATES, INC. and
CARLOS LEGASPY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

M. MICHELE SAWYER, a natural person

           Petitioner,

       v.

HORWITZ & ASSOCIATES, INC., a
Delaware Corporation; CARLOS LEGASPY,
a natural person, and DOES 1-10, inclusive,

         Respondents.

CASE NO. 3:11CV1604 LAB JMA

**RESPONDENTS'/CROSS-PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITIONER'S PETITION TO VACATE ARBITRATION AWARD AND IN SUPPORT OF CROSS-PETITION TO CONFIRM AWARD**

Date:        October 31, 2011
Time:        11:15 a.m.
Courtroom.:  9
Judge:      Hon. Larry Burns

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... II

I.    INTRODUCTION ............................................................................................. 1

II.   HISTORY OF THE ARBITRATION PROCEEDINGS ................................... 2

III.  ARGUMENT ..................................................................................................... 5

      A.   The FAA Strongly Favors Confirmation of Arbitration Awards ........... 5

      B.   The Arbitration Award is Final and Binding ......................................... 7

      C.   The Arbitration Panel Did Not Exceed its Powers Nor Was Any Arbitrator
           Guilty of Misconduct ............................................................................. 8

           1.   There Are No Statutory Grounds for Vacatur of the Arbitration Award .... 8

           2.   Petitioner's Expungement Argument is Wholly Lacking in Merit ............ 9

           3.   The Arbitration Award Was Not in Manifest Disregard of the Law ......... 11

                a.   The Petitioner Has Not Met Her Burden to Demonstrate Manifest
                     Disregard of the Law .................................................................. 12

                b.   The Award Cannot Be Held to Constitute a Manifest Disregard of
                     the Law Based Upon a Misapplication of "Facts" Which Are
                     Disputed .................................................................................... 15

                c.   Petitioner Cannot Support Her Claim that the Award  Constitutes
                     a Manifest Disregard of the Law by Citing to a Vacated Order .... 17

           4.   The Arbitration Panel Did Not Violate 9 U.S.C. § 10(a)(3) By Failing to
                Allow Petitioner's Attempt to Use Inappropriate Evidence for
                Impeachment ............................................................................................ 19

                a.   Petitioner's Phone Records Were Properly Excluded ................... 19

                b.   Refusal to Allow Cross-Examination Using Audio Clips From
                     Earlier Arbitration Testimony Was Appropriate ......................... 21

      D.   The Petition to Vacate is Defective as a Matter of Procedure ............... 21

IV.   RESPONDENTS' CROSS-PETITION SHOULD BE CONFIRMED ............. 22

V.    CONCLUSION ................................................................................................. 23

TABLE OF AUTHORITIES

Page

*Cases*

*A.G. Edwards & Sons, Inc. v. Mccollough*, 967 F.2d 1401, 1404 N.2 (9th Cir. 1992) ............... 5

*American Postal Workers Union Afl-Cio v. U.S. Postal Service* ("*American Postal Workers*"), 682 F.2d 1280, 1283 (9th Cir. 1982) ........................................................................... 9,13, 16

*B.L. Harbert Int'l, Llc v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006) ........................... 15

*Barnes v. Logan*, 122 F.3d 820 (9th Cir. 1997) ....................................................................... 23

*Bosack v. Soward*, 586 F.3d 1096, At 1104 (9th Cir. 2009) ................................................. 9, 12

*Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loed, Inc.* 769 F.2d 561, 567 (9th Cir. 1985) ....................................................................................................................... 14

*Carter v. Health Net Of Calif., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) ............................. 12, 13

*Catz Am. Co. v. Pearl Grange Fruit Exch., Inc.*, 292 F.Supp. 549 (S.D.N.Y. 1968) ............. 5, 16

*City Of Los Angeles v. Surety Ins. Co.*, 152 Cal.App.3d 16, 22 (1984) ................................... 19

*Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879-880 (9th Cir. 2007) ................................. 12, 13

*Comedy Club, Inc. v. Improv. West Assoc.* ("Comedy Club"), 553 F.3d 1277, 1290 (9th Cir. 2009) ..................................................................................................................................... 11, 12

*Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 735 (9th Cir. 2006) ..................................... 6

*Coutee v. Barrington Capital Group, L.P., Et Al.*, 336 F.3d 1128, 1134 (9th Cir. 2003) .... 9, 16, 17, 23

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2nd Cir. 2006) ................................... 6

*Di Donato-Young v. Wachovia Securities, Llc*, 2009 Wl 33319 ............................................... 15

*Duffy v. Cavalier* (1989) 215 Cal.App.3d 1517 ....................................................................... 14

*Follansbee v. Davis, Skaggs & Co., Inc.*, 681 F.2d 673, 677 (1982) ......................................... 14

*French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902 (9th Cir. 1986) .... 5, 7 , 22

*G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir.2003) ....................................... 7

*Green v. Progressive Asset Management, Inc.*, 2000 U.S. Dist. 2000 Wl 1528276 (S.D.N.Y. 2000) ................................................................................................................................................... 22

*Independent Order Of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940-41 (2nd Cir. 1998) ........................................................................................................................................... 14

*Kyocera Corp. v. Prudential-Bache Trade Services, Inc. ("Kyocera")*, 341 F.3d 987 (9th Cir. 2003) ............................................................................................................................................ 5, 6, 11

*Lew Lieberman & Co. v. Randle*, 85 F. Supp. 2d 123, 126 (E.D.N.Y. 2000) ............................ 21

*Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004) ................................... 12

*Michigan Mutual Ins. Co. v. Unigard Security Ins. Co. ("Michigan Mutual")*, 44 F.3d 826, 832 (9th Cir. 1995) ....................................................................................................................... 7, 12

*Moncharsh V. Heily & Blase*, 3 Cal.4th 1, 11 (1992) ................................................................. 5

*Pacific Reinsurance Management Corp. V. Ohio Reinsurance Corp*, 935 F.2d 1019, 1025-26 (9th Cir. 1991) ........................................................................................................................ 9, 16, 17

*People v. Ramirez*, 64 Cal.App.3d 391 (1976) ........................................................................... 19

*Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337 F.Supp. 107, 111 (N.D.Ala. 1971) ................................................................................................................................................. 14

*Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir. 2007) .............. 7, 22

*Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal.4th 394, 425 (1996) ............... 14

*Schenck v. Bear, Stearns & Co.*, 484 F. Supp. 937, 947 (S.D.N.Y. 1979) ................................. 14

*Schoenduve Corp. v. Lucent Technologies, Inc.*, 445 F.3d 727, 731 (9th Cir. 2006) ............. 7, 11

*Sheet Metal Workers' Int'l Ass'n V. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996) 6

*Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1271 (9th Cir. 2002) ............................... 6

*Strobel v. Morgan Stanley Dean Witter, Et Al.*, 2006 WL 3735739 (S.D. Cal. 2006) ......... 15, 18

*Twomey v. Mitchum, Jones & Templeton* (1968) 262 Cal.App.2d 690, 708-09 ........................ 14

*Veliz v. Cintas Corp.*, 2009 U.S. Dist. 2009 Wl1766691, 9 (N.D. Cal. 2009) ............................ 6

***Statutes***

California Code of Civil Procedure §286 .................................................................................... 2

California Code Of Civil Procedure §2540(D) .......................................................................... 22

California Corporations Code §25401 ........................................................................................ 2

***Other Authorities***

Finra Code, Rule 12401(C) ......................................................................................................... 2

Finra Code, Rule 12403 .............................................................................................................. 2

Finra Code, Rule 12507 ............................................................................................................ 20

Finra Code, Rule 12506 ............................................................................................................ 20

Finra Code, Rule 12514(A) ...................................................................................................... 20

Finra Code, Rule 12514(C) ...................................................................................................... 20

RESPONDENTS' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
PETITION TO VACATE ARBITRATION AWARD

# I.    <u>INTRODUCTION</u>

Respondents, Horwitz & Associates, Inc. and Carlos Legaspy ("Respondents" or the "Horwitz Parties") were the prevailing parties as a result of a fair arbitration decided by an impartial and extraordinarily experienced, three-member panel of the Financial Industry Regulatory Authority ("FINRA").  Petitioner Michelle Sawyer ("Petitioner" or "Ms. Sawyer"), who had agreed to arbitration as the means of finally resolving any disputes that arose in connection with her relationship with the Horwitz parties, has now refused to accept the panel's Arbitration Award and pay the FINRA fees associated with it.

In effect, Ms. Sawyer is seeking an appeal of a dispute resolution process which, by its very nature, is intended to be a final resolution.  Public policy and the overwhelming body of Federal and state law mandate that the Court uphold the Arbitration Award and end this dispute now because there are no grounds for vacatur, modification or correction of the arbitration award.  The arbitration panel has made its decision and, absent any showing of misconduct on the part of the Panel, which Ms. Sawyer cannot demonstrate, its determination should be respected.

The arbitration consisted of fourteen (14) days of evidentiary hearings during which the arbitration panel reviewed hundreds of exhibits comprised of thousands of pages of evidence and heard the testimony of six (6) factual witnesses and three (3) expert witnesses.  After listening to the testimony and thereafter independently reviewing the submitted evidence, legal briefs and relevant law, the arbitration panel reached its determination that the Petitioner's claims were "denied in their entirety" and that "all other relief requested" was "denied."

State and Federal case law uniformly holds that – in all but the rarest of circumstances, which are not found, nor alleged, here – an arbitration award must be upheld.  That is why the FAA and relevant case law intentionally impose a substantial burden of proof on the party seeking to overturn an arbitration award.

Petitioner has failed to carry her burden of proof and this petition is wholly without merit.  The determination of the arbitration panel should be respected, Ms. Sawyer's Petition to Vacate Arbitration Award should be denied, and the Arbitration Award should be confirmed.

## II.        HISTORY OF THE ARBITRATION PROCEEDINGS

On or about May 6, 2009, Ms. Sawyer filed a Statement of Claim ("SOC") with FINRA alleging various claims against the Horwitz Parties including: Unsuitability, Churning, Breach of Fiduciary Duty, Deceit, Violations of California Corporations Code §2540(d) and §25401, and Negligence.  (Declaration of Dennis J. Kelly In Support of Opposition to Petition to Vacate Arbitration Award ("DJK Decl."), ¶3, Exhibit ("Ex.") 1.)  Pursuant to FINRA rules, on the day Ms. Sawyer filed her SOC, she also signed and submitted to FINRA a form entitled, "Arbitration Submission Agreement" ("Submission Agreement"), by which she stated that she and her representatives "read the procedures and rules of FINRA relating to arbitration," and agreed to be bound by the procedures and rules.  In signing the Submission Agreement, Ms. Sawyer further agreed that she would "abide by and perform any award(s) rendered pursuant to [the] Submission Agreement."  (DJK Decl., ¶4, Exh. 2.)

In accordance with FINRA rules, the arbitration panel for this matter was composed of three members.  (FINRA Code, Rule 12401(c); DJK Decl., ¶6, Exh. 5.)  Shortly after the initiation of the action, the parties were given an opportunity to select arbitrators from a list of 24 FINRA approved arbitrators.  In accordance with FINRA rules, each party had the opportunity to rank arbitrators which were separated into three categories: Public Chairperson, Public Arbitrator, and Non-Public Arbitrator.  (FINRA Code, Rule 12403; DJK Decl., ¶6, Exh. 6.)  Each Party also had the opportunity to strike four of the arbitrators from each of the three categories.  (*Id.*)

Both Petitioner and the Horwitz Parties took advantage of these opportunities and submitted arbitrator ranking forms to rank and remove potential arbitrators for this matter.  (DJK Decl., ¶7.)  On or about October 27, 2009, FINRA informed the parties of the three arbitrators who were selected for the arbitration panel: Chairman and public arbitrator, Guenter S. Cohen, Esq.; public arbitrator, E. Milton Frosburg, Esq.[1]; and non-public arbitrator, Cynthia B. Stone.  (DJK Decl., ¶8.)

---

[1] Although Petitioner now repeatedly refers to Mr. Frosburg as "Judge Frosburg," a search of the entire record for this matter will disclose not a single written reference or an oral statement by the Petitioner's counsel, fellow arbitrators, or anyone else calling Mr. Frosburg "Judge."  (See Dkt. No. 1-1.)  Mr. Frosburg was the public

From the time of the filing of Ms. Sawyer's initial statement of claim in May of 2009 to the start of the arbitration hearings in November of 2010, the parties had one year and six months of extensive discovery, including discovery motion practice and hearings.  During that time, the parties also sought and obtained the production of documents from third parties.  (DJK Decl., ¶¶9-11.)   In all, each party produced well-over 4,000 pages of documents.  (*Id.*)

Prior to the commencement of the arbitration hearing, each party  took advantage of the opportunity to submit to the arbitration panel extensive pre-arbitration memoranda outlining the factual and legal underpinnings of each party's case.  (DJK Decl., ¶12.)   In her witness disclosure, Ms. Sawyer indicated her intent to call fourteen (14) separate witnesses at the arbitration hearing, including three (3) separate expert witnesses.  (DJK Decl., ¶13.)  The Horwitz Parties indicated they would call seven witnesses (7) at the hearing, including one (1) expert witness.  (DJK Decl., ¶14.)

From November of 2010 through March of 2011, the parties participated in fourteen non-consecutive days of arbitration hearings before the three-member FINRA-appointed arbitration panel in San Diego, California.  (DJK Decl., ¶15.)  Those hearings were held from November 9 through 12, 2010; February 14 through 18, 2011; and March 21 through 25, 2011.  (*Id.*)  Over the course of the arbitration hearing, the parties introduced hundreds of exhibits that were received as evidence.  (DJK Decl., ¶16.)  Ms. Sawyer called five witnesses in her case-in-chief, including two experts; the Horwitz Parties called seven witnesses, including one expert.  (DJK Decl., ¶¶13-14.)   In total, testimony was offered by nine witnesses: six percipient witnesses and three expert witnesses.  (DJK Decl., ¶¶14-15.)

Both Ms. Sawyer and Mr. Legaspy testified on multiple occasions during the arbitration hearing.  Mr. Legaspy was questioned as Petitioner's first witness at the start of her case-in-chief.  He later testified on direct examination during the third week of arbitration as part of Respondents' case-in-chief, and was thereafter cross examined a second time by Petitioner's counsel.  (DJK Decl., ¶17.)  Ms. Sawyer testified as her own witness during the first week of

arbitrator and one of three arbitrators who heard the case.  Petitioner's transparent efforts to elevate Mr. Frosburg in stature because he dissented is unavailing.

1  arbitration and was later called by Respondents' counsel to testify in the third week of

2  arbitration during Respondents' case-in-chief.

3      When it came to closing arguments, Petitioner elected to go last.  (DJK Decl., ¶19.)

4  After Respondent's closing argument, Petitioner's counsel attempted to present a closing which

5  utilized a PowerPoint presentation containing audio clips of testimony from the arbitration

6  hearings.  (DJK Decl., ¶20.)  Respondents objected, noting that Petitioner had already abused

7  the PowerPoint process in Petitioner's opening by introducing documents not yet in evidence.

8  Respondents also noted that such a presentation – which included audio clips – would

9  undoubtedly result in the presentation of self-serving snippets of testimony used out of context,

10 as well as the use of documents not received in evidence.  (DJK Decl., ¶21.)

11     After consideration, the panel overruled Respondents' objection, allowing Petitioner's

12 counsel to use the PowerPoint presentation and accompanying audio clips.  (DJK Decl., ¶22.)

13 Unfortunately, Petitioner's closing was as improper as Respondents feared it would be.  In fact,

14 the arbitration panel, realizing its error in allowing Petitioner's improper closing, invited a

15 response/objection from Respondents, since Respondent's counsel had been prohibited from

16 objecting during the course of Petitioner's closing.  (DJK Decl., ¶23.)

17     Respondents' counsel informed the panel that Petitioner's closing should never have

18 been permitted via PowerPoint, much less one with audio clips, as it allowed Petitioner to paint

19 a picture at odds with the true facts that came out as evidence in the arbitration hearing – all to

20 the determent and prejudice of the Respondents.   (DJK Decl., ¶24.)

21     Given that the 14 days of hearing took place over 5 months, prior to closing arguments

22 Respondents requested the opportunity to submit post-hearing briefs.  (DJK Decl., ¶18.)

23 Petitioner objected and the arbitration panel ruled for the Petitioner, refusing Respondents'

24 request for additional briefing.  (*Id.*)  As part of Respondents' objection to Petitioner's closing

25 argument, Respondents again sought the right to submit a post-hearing brief, noting that

26 Petitioner's PowerPoint, audio presentation and submission of PowerPoint printouts to the

27 panel, were the effective equivalent of submitting a post hearing brief.  (DJK Decl., ¶25; *see*

28 *also*, Petitioner's Exhibit 19, Dkt. No. 1-6, pp. 31-99).

1    The arbitration panel met in executive session and then ruled that Petitioner's closing

2    was "highly unusual" in the arbitrators' view (in light of their combined numerous years of

3    experience) and agreed with Respondents that Petitioner had, in fact, effectively submitted a

4    brief.  (DJK Decl., ¶26.)  Therefore, the panel ruled that the Respondents (and *only the*

5    *Respondents*) would be allowed to submit a post-hearing brief, which Respondents did.  (DJK

6    Decl., ¶¶27-28; *see* Petitioner's Exhibit 21, Dkt. No. 1-7, pp. 14-35.)  Despite the panel's ruling

7    that only the Respondents be allowed to submit a post-hearing brief, Petitioner, in direct

8    contravention to the panel's ruling, submitted a "response."  (DJK Decl., ¶29, Exh. 7.)

9    On April 27, 2011, FINRA Dispute Resolution issued and served on all parties an

10   Arbitration Award which denied Ms. Sawyer's claims "in their entirety."  (DJK Decl., ¶30;

11   Petitioner's Exhibit 9, Dkt. No. 1-5, pp. 28-36.)

## III.   ARGUMENT

13   When parties agree to allow arbitrators to adjudicate their disputes, they agree to be

14   bound by the Arbitrators' decision.  Parties to arbitrations knowingly forego the right to a jury

15   trial and judicial review of errors of fact and law.  Both Federal and California state courts have

16   a strong bias against overturning arbitration awards.  *Kyocera Corp. v. Prudential-Bache Trade*

17   *Services, Inc. ("Kyocera")*, 341 F.3d 987 (9th Cir. 2003); *French v. Merrill Lynch, Pierce,*

18   *Fenner & Smith, Inc.*, 784 F.2d 902 (9th Cir. 1986); *Moncharsh v. Heily & Blase*, 3 Cal.4th 1,

19   11 (1992) (Noting that arbitration awards are rarely granted because "the Legislature has

20   expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive

21   means of dispute resolution.'") (citation omitted).

22   Strong public policy dictates that arbitration awards should be upheld in all but the most

23   extraordinary circumstances. *Catz Am. Co. v. Pearl Grange Fruit Exch., Inc.*, 292 F.Supp. 549

24   (S.D.N.Y. 1968).  This is due to the fact that the purpose of arbitration is to provide parties with

25   a streamlined, inexpensive and conclusive resolution.

26   **A.    The FAA Strongly Favors Confirmation of Arbitration Awards**

27   Federal policy strongly favors arbitration.  *A.G. Edwards & Sons, Inc. v. McCollough*,

28   967 F.2d 1401, 1404 n.2 (9th Cir. 1992).  As a general rule, when parties agree to resolve

disputes through arbitration, courts **defer** to the arbitration panel's decision. *Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996) (Noting that "judicial review of an arbitration award is both **limited** and **highly deferential**.")(Emphasis added.); *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 735 (9th Cir. 2006) ("Review of the merits of an arbitration award is extremely limited."); *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1271 (9th Cir. 2002) ("Judicial review of an arbitration panel's decision is 'extremely narrow.'")

The Federal Arbitration Act ("FAA") sets forth limited, exceptional grounds upon which an arbitration award may be vacated, modified, or corrected by judicial review.  9 U.S.C. §§ 1, *et seq.*; *see also*, *Kyocera Corp.*, *supra*,  341 F.3d at 997 (9th Cir. 2003).

The FAA instructs that a court may only vacate an arbitration award if:

- The award was procured by corruption, fraud, or undue means;

- There was evident partiality or corruption in the arbitrators;

- The arbitrators were guilty of misconduct in refusing to postpone the hearing . . . or in refusing to hear evidence pertinent and material to the controversy, or somehow misbehaved so as to prejudice a party; or

- The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The party seeking to vacate an arbitration award has the burden of proof to demonstrate that such exceptional grounds exist to vacate the award.  *Veliz v. Cintas Corp.*, 2009 U.S. Dist. 2009 WL1766691, 9 (N.D. Cal. 2009), citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2nd Cir. 2006) ("A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.").

The extraordinarily high standard for judicial review of arbitration awards is consistent with public policy supporting arbitration. *Catz Am. Co.*, *supra*,  292 F.Supp. at 551 (S.D.N.Y. 1968) (Noting: "Since one of the fundamental purposes of resorting to arbitration is to reduce the cost and delay of litigation, the role of the court must be limited in reviewing the arbitration

1    award.").

2        In *Kyocera*, *supra*, the Ninth Circuit acknowledged the limited grounds for judicial

3    review of arbitration awards, noting:

4        "These grounds afford an extremely limited authority, a limitation that is
         designed to preserve due process but not to permit unnecessary public intrusion
5        into private arbitration procedures.  Broad judicial review of arbitration
         decisions could well jeopardize the very benefits of arbitration, rendering
6        informal arbitration merely a prelude to a more cumbersome and time-
         consuming judicial review process."
7

8    *Id.*, at 998.

9        Significantly, it has been held that the FAA "**presumes** that arbitration awards will be

10   **confirmed**...."  *Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir.

11   2007) (emphasis added).  Indeed, confirmation of an arbitration award is "required, even in the

12   face of 'erroneous findings of fact or misinterpretations of law.' "  *French*, *supra*, 784 F.2d at

13   906.  Courts generally hold that vacatur is "severely limited and for the most part, the court

14   defers to the arbitrators' determination of the award."  *Michigan Mutual Ins. Co. v. Unigard*

15   *Security Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995.) Within the Ninth Circuit, "[i]t is not even

16   enough that the [arbitrator] may have failed to understand or apply the law.  An arbitrator's

17   decision must be upheld unless it is completely irrational or it constitutes a manifest disregard

18   of the law." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir.2003); *see also,*

19   *Schoenduve Corp. v. Lucent Technologies, Inc.*, 445 F.3d 727, 731 (9th Cir. 2006).

20   **B.     The Arbitration Award is Final and Binding**

21       FINRA Rule 12904 states: "Unless the applicable law directs otherwise, *all awards*

22   *rendered under the Code are final and are not subject to review or appeal.*"  (Emphasis added.)

23   (DJK Decl., ¶31, Exh. 8.)

24       Both Ms. Sawyer and each of the Horwitz Parties signed and filed FINRA Submission

25   Agreements.  As part of those agreements, all parties stated:

26   1.  The undersigned parties ("parties") hereby submit the present matter in controversy, as
         set forth in the attached statement of claim, answers, and all related cross claims,
27       counterclaims and/or third party claims which may be asserted, to arbitration in
         accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.
28

2. The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules.

3. The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

4. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

(DJK Decl., ¶¶4-5, Exhs. 3, 4.)

Therefore, pursuant to FINRA rules and the Submission Agreements signed by all parties to the action, the Arbitration Award that FINRA issued and served on April 27, 2011, denying Ms. Sawyer's claims "in their entirety," is final and should not be subject to review or appeal.

## C.   The Arbitration Panel Did Not Exceed Its Powers Nor Was Any Arbitrator Guilty of Misconduct

Ms. Sawyer's Petition sets forth two "alternative" grounds for vacating the arbitration award: (1) that the award is "irreconcilable and in manifest disregard of the law and undisputed facts" and, therefore, "facially defective"; and (2) the arbitration panel improperly "refused to allow Petitioner to present highly relevant impeachment evidence," thereby denying the Petitioner "a full and fair hearing on the merits." (Docket Number ("Dkt. No.") 1-1, p. 4:5-10.

### 1.   There Are No Statutory Grounds for Vacatur of the Arbitration Award

As noted, *none* of the statutory grounds under the FAA for vacatur of an arbitration award are met in this case. Indeed, it is noteworthy to point out that Petitioner does not even argue that there was fraud or corruption in the arbitration panel or that they exhibited any bias that prejudiced her interest. In short, Petitioner has completely disregarded the FAA's standard for vacating an arbitration award.

Ms. Sawyer improperly asks this Court to review the merits of the case by re-examining legal authorities and re-weighing the evidence, a task in which this Court does not have the

1  authority to engage.  *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp*, 935

2  F.2d 1019, 1025-26; *Coutee v. Barrington Capital Group, L.P., et al.*, 336 F.3d 1128, 1134 (9th

3  Cir. 2003), (Finding that the Court has no authority to re-weigh the evidence).  A court may not

4  review *de novo* an arbitration panel's factual findings or legal conclusions.  *American Postal*

5  *Workers Union AFL-CIO v. U.S. Postal Service* ("*American Postal Workers*"), 682 F.2d 1280,

6  1283 (9th Cir. 1982).  Further, a court is prohibited from overturning an arbitration panel's

7  award simply because the court disagrees with the panel's findings.  *Bosack v. Soward*, 586

8  F.3d 1096, at 1104 (9th Cir. 2009) (noting that courts are "prohibited" from reviewing "factual

9  findings and legal conclusions" even when reviewing an arbitrator's decision for manifest

10 disregard of the law).  Accordingly, Ms. Sawyer's request is improper because courts must not

11 review the merits of an underlying arbitration.

12         Upon filing her first Statement of Claim with FINRA, Ms. Sawyer agreed to be bound

13 by FINRA rules and any eventual arbitration award.  The arbitrators have spoken, and the

14 "arbitrator[s]' decision should be the end, not the beginning, of the dispute."  *Moncharsh*,

15 *supra*, 3 Cal.4th at 10.

16         **2.  Petitioner's Expungement Argument is Wholly Lacking in Merit**

17         Petitioner attempts to mislead the Court, arguing that the arbitration panel's refusal to

18 grant expungement is necessarily (at least in Petitioner's wishful thinking) a finding that Ms.

19 Sawyer's claims had merit and were not false.  That is, without question, not the case.

20         Petitioner's argument relies upon a logical fallacy: that a refusal to grant expungement

21 on the basis that the claim is factually impossible, clearly erroneous or false establishes the

22 exact opposite – that the claim has merit.  That conclusion does not follow and explains why

23 FINRA arbitration panels routinely deny a claimant's claim <u>and</u> a respondent's request for

24 expungement at the same time.

25         The primary authority for FINRA's rules on expungement is, of course, FINRA.

26 Particularly instructive here is a FINRA publication entitled, "FINRA Rule 2080 (Formerly

27 NASD Rule 2130) Frequently Asked Questions."  (*See* DJK Decl., ¶32, Exh. 9.)  Therein, in

28 question number 5, FINRA provides an answer to the question: "[w]hat affirmative finding(s)

1  must arbitrators make for FINRA to waive participation in the court confirmation process?"

2  The publication then discusses what the arbitrators must conclude in order to grant

3  expungement.  Because it is lengthy, it will not be quoted here, but suffice to say, it is clear

4  from FINRA that a denial of a request for expungement is <u>not</u> a finding that the case has merit.

5       Elsewhere in that same publication, FINRA answers the question (#18): "How did

6  FINRA determine the standards for expungement of customer dispute information?"  The

7  answer is as follows:

8       In crafting the standards set forth in FINRA's rules regarding expungement,
    FINRA was guided by the interests of regulators in having accurate and relevant
9    information to fulfill their regulatory responsibilities, the interests of the
    brokerage community in having a fair process to protect their reputations where
10    appropriate, and the interests of investors in having access to accurate and
    meaningful information about brokers with whom they now or in the future may
11    engage in business.  FINRA recognizes that expungement of a CRD record
    under any circumstances is an extraordinary remedy and should be used only
12    when the expunged information has no meaningful regulatory or investor
    protection value.  FINRA believes that the criteria enumerated in the
13    expungement rules meet this standard.

14  (*Id.*)

15       FINRA's position totally disproves Petitioner's fanciful argument that a denial of a

16  request for expungement means the Petitioner's claim had merit and was not false.  According

17  to FINRA, that is simply not so.

18       From that erroneous premise, Petitioner makes a leap of logic arguing: "With the

19  Majority's finding that Ms. Sawyer's claims were not false, the balance of the Majority's

20  decision is completely irrational and irreconcilable with the undisputed evidence."

21       Petitioner's transmogrification of the arbitration panel's award borders on wizardry.

22  Returned to its original form, Petitioner's assertion is revealed to have nothing behind the

23  mask:

24  • "With the Majority's finding" (Dkt. No., 1-1, p. 13:5) – there is just one award,
    granted on a 2-1 basis.

25
26  • The "Majority's finding that Ms. Sawyer's claims were not false" (Dkt. No., 1-1, p.
    13:5-7) – there was no "finding" of any kind by the arbitration panel.  The panel
    simply refused expungement, without explanation.

27
28  • "[T]he balance of the Majority's decision" (Dkt. No., 1-1, p. 13:6) – the award (not
    a "majority decision") contains no findings of fact or conclusions of law, so "the

1   balance" of the arbitration award is the ruling that Claimant's claims are denied in
their entirety.

2   • "[I]s completely irrational and irreconcilable with the undisputed evidence" (Dkt.
3   No., 1-1, p. 13:6-7) – in other words, the denial of Petitioner's claims in their
entirety is in Petitioner's view based on purported erroneous legal conclusions not
supported by the "undisputed evidence."  That is <u>not</u> a basis for this Court to vacate
4   the award.

5   Clearly, Petitioner is cognizant of the fact that her Petition to Vacate is a disfavored

6   motion and that she does not possess adequate grounds for the Petition under the limited

7   grounds allowed by the FAA and Ninth Circuit.  Because of that, Petitioner has resorted to the

8   artful argument noted above, which seeks to recast virtually every element of her argument in a

9   different light to suggest that Petitioner's square peg fits into the FAA's round hole.

10   In sum, as many arbitration panels do, the panel here denied expungement cognizant of

11   FINRA's view that to grant it is an "extraordinary remedy" and should only occur "when the

12   expunged information has no meaningful regulatory or investor protection value."  Petitioner's

13   efforts to transform the Panel's action into something else entirely is unavailing.  As it forms

14   the crux of Ms. Sawyer's entire Petition, the Petitioner's failure in this regard dooms the entire

15   Petition to Vacate.

16   **3.  <u>The Arbitration Award Was Not In Manifest Disregard of the Law</u>**

17   Petitioner's principal claim for vacatur is that the arbitration award was rendered in

18   "manifest disregard of the law."  (*See*, Dkt. No. 1-1, pp. 11-23.)  "Manifest disregard of the

19   law" is not an independent basis for overturning an arbitration award explicitly set forth in the

20   FAA.  *See* 9 U.S.C. §§ 1, *et seq.*  Rather, the Ninth Circuit Court of Appeals has interpreted 9

21   U.S.C. § 10(a)(4) of the FAA, which allows a court to vacate an award "where the arbitrators

22   exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award

23   upon the subject matter submitted was not made," to include awards demonstrating a "manifest

24   disregard of the law" or awards which are "completely irrational."  *Kyocera*, *supra*, 341 F.3d at

25   997; *Schoenduve Corp.*, *supra*, 442 F.3d at 731; *Comedy Club, Inc. v. Improv. West Assoc.*

26   ("Comedy Club"), 553 F.3d 1277, 1290 (9th Cir. 2009).

27   ///

28   ///

In order to vacate an award on these grounds, the **record** must demonstrate that the "arbitrators recognized the applicable law and then ignored it." *Michigan Mutual Ins. Co. v. Unigard Security Ins. Co. ("Michigan Mutual")*, 44 F.3d 826, 832 (9th Cir. 1995); *Comedy Club*, *supra*, 553 F.3d at 1290.  To meet this standard, " 'there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and **intentionally disregarded it**.' " *Bosack*, *supra*, 586 F.3d at 1104 (9th Cir. 2009), citing *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004), (emphasis added).  Finally, the "governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Carter v. Health Net of Calif., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004); *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879-880 (9th Cir. 2007).

As noted by the Eighth Circuit:

> Manifest disregard requires something more than a mere error of law.  If an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to law, and said that he was doing so because he thought the law unfair, that would be an instance of "manifest disregard."

*Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004).

### a.  <u>The Petitioner Has Not Met Her Burden to Demonstrate Manifest Disregard of the Law</u>

The Petitioner has not demonstrated that the arbitrators recognized the applicable law and then chose to ignore or disregard that applicable law.  *Michigan Mutual*, *supra*, 44 F.3d at 832; *Bosack*, *supra*, 573 F. 3d at 899.  Rather, the Petitioner simply disagrees with the arbitrator's decision.  Accordingly, the petition to vacate must be seen as nothing more than an abuse of the existing procedures to vacate arbitration awards.

In fact, given that the Arbitration Award does not contain findings of fact or conclusions of law, or any explanation of the Award whatsoever, the Ninth Circuit's "manifest disregard of the law" standard simply does not – because it cannot – apply here.

The Petition to Vacate relies upon the *Coutee* decision, which itself relies upon the *American Postal Worker's* decision.  The *American Postal Worker's* court refused to confirm an arbitration award because the arbitrator's written decision reached a conclusion that was not

1    supported by the undisputed facts or the law.  The court stated: "The facts of this case are

2    undisputed.  Therefore, we need not decide what deference should be given to the arbitrator's

3    findings of fact." *American Postal Workers*, *supra*, 682 F.2d at 1283.

4           The undisputed fact was that the individual in question, Michael Murphy, participated

5    in a strike against the government.  The court noted that by statute, "a worker may not hold a

6    government position if the individual has participated in a strike against the government."  *Id*.

7    Despite Murphy's conduct and the acknowledged controlling law, the arbitrator nevertheless

8    reinstated Murphy to his government Job.  The *American Postal Workers* court found that the

9    arbitrator's conclusions that Murphy did not strike "would constitute manifest disregard of the

10   law."  *Id*., at 1284.

11          The court was careful to note that:

12          Review of arbitration awards is more limited than review of trial court
            decisions.  *An arbitrator's award will not be vacated because of erroneous*
13          *findings of fact or misinterpretations of law.*

14   *Id*., at 1285 (emphasis added).

15          The court went on to state that the purpose of the FAA is to make arbitration

16   agreements as enforceable as other contracts.  From there, the court brought in the general

17   principal of contract law that courts will not enforce contracts requiring the performance of an

18   illegal act.  From those propositions, the *American Postal Workers* court concluded that it could

19   not enforce the arbitrator's award because it would require performance of an illegal act.

20          In *American Postal Workers*, the Ninth Circuit had undisputed facts to review, where

21   here that is not the case.  In addition, the law in *American Postal Workers* was a well defined

22   explicit statute that was clearly applicable, which later decisions have ruled must exist for a

23   court to even consider vacating an award based on manifest disregard of the law.  *See*, *Carter*,

24   *supra*, 374 F.3d at 838*, Collins, supra*, 505 F.3d 879-880.

25          In contrast, here the law which Petitioner claims was manifestly disregarded is not well

26   defined and explicit.  Petitioner devotes the vast majority of the Petition's Memorandum of

27   Law arguing that the arbitrator's award was in manifest disregard of the law concerning a stock

28   broker's fiduciary duties to his customer.  The "law" in this regard is entirely case law and is

1    fact specific.

2        Under California law, there is a fiduciary duty in the broker-customer relationship.

3    *Duffy v. Cavalier* (1989) 215 Cal.App.3d 1517; *Twomey v. Mitchum, Jones & Templeton*

4    (1968) 262 Cal.App.2d 690, 708-09.  Controlling case law states that for a fiduciary

5    relationship to exist "trust and confidence is reposed by one person in the integrity and fidelity

6    of another." *Twomey v. Mitchum, Jones & Templeton* (1968) 262 Cal.App.2d 690, 708-09;

7    *Duffy v. Cavalier* (1989) 215 Cal.App.3d 1532-1517.  If such a fiduciary duty is found to exist,

8    the scope of that duty varies with the facts of the relationship.  *Rosenthal v. Great Western*

9    *Financial Securities Corp.*, 14 Cal.4th 394, 425 (1996).

10        Generally, in a nondiscretionary account, such as those held by Petitioner at Horwitz,

11    "the broker's duties are quite limited," and include such things as the duty to obtain a

12    claimant's authorization before making trades and the duty to execute requested trades.

13    *Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940-41 (2nd

14    Cir. 1998).  In such an account, the "scope of affairs entrusted to a broker is generally limited

15    to the completion of a transaction." *Schenck v. Bear, Stearns & Co.*, 484 F. Supp. 937, 947

16    (S.D.N.Y. 1979); *see also*, *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337

17    F.Supp. 107, 111 (N.D.Ala. 1971).

18        Further, in a nondiscretionary account such as Petitioner's, "[a]s long as the customer

19    has the capacity to exercise the final right to say 'yes' or 'no,' the customer controls the

20    account." *Follansbee v. Davis, Skaggs & Co., Inc.*, 681 F.2d 673, 677 (1982).  The broker

21    assumes no continuing obligation to advise his clients of information that affects their

22    securities.  *Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loed, Inc.* (9th Cir. 1985)

23    769 F.2d 561, 567.

24        Thus, the law concerning the fiduciary duty at issue here (and the alleged breach

25    thereof) is not well-defined or explicit, but rather fact driven and subject to interpretation.  As

26    such, another important, required leg of the Petition cannot stand.  Ms. Sawyer's Petition to

27    Vacate does not demonstrate that "the arbitrators were aware of the law and intentionally

28    disregarded it," as required by *Bosack*.  In fact, the Petition to Vacate doesn't even try to make

that required showing.

Although the Petitioner is unhappy with the result of the fourteen day arbitration hearing, there is no indication that the panel "manifestly disregarded" the law of breach of fiduciary duty in reaching its award and any claim by Petitioner to the contrary must be rejected.

Despite being a disfavored motion, granted in only the rarest of circumstances, this is, at least, the third time Petitioner's counsel has filed a petition to vacate an arbitration award.[2] Accordingly, the only "manifest disregard of the law" that is readily discernable here is identical to that remarked upon in *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006), where the court addressed a similar abuse of the availability of judicial review, finding:

> There is, in short, no evidence that the arbitrator manifestly disregarded the law. The only manifest disregard of the law evident in this case is [the moving party's] refusal to accept the law of this circuit which narrowly circumscribes judicial review of arbitration awards....
>
> When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken. Arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be. If arbitration is to be a meaningful alternative to litigation, the parties must be able to trust that the arbitrator's decision will be honored sooner instead of later.

*Id.*, at 913.

### b. The Award Cannot Be Held to Constitute a Manifest Disregard of the Law Based Upon a Misapplication of "Facts" Which Are Disputed

Petitioner lists ten separate topics which she claims contain "undisputed facts" that should have lead the arbitration panel to find that Mr. Legaspy breached his fiduciary duty. Not only is Petitioner's recitation of the facts disingenuous and one-sided, the vast majority, if not all, of the "undisputed facts" listed by Petitioner are, in fact, **disputed**. (*See*, Dkt. No. 1-1,

---

[2] *Strobel v. Morgan Stanley Dean Witter, et al.*, 2006 WL 3735739; *Di Donato-Young v. Wachovia Securities, LLC*, 2009 WL 33319, and this case.

1   pp. 11-23.)  Petitioner's arguments also seek to have this Court engage in the type of review

2   which, as noted in sub-section (C)(1), above, case law prohibits.  *See*, *Pacific Reinsurance*,

3   *supra*, 935 F.2d at 1026; *Coutee*, *supra*, 336 F.3d at 1134; *American Postal Workers*, *supra*,

4   682 F.2d at 1283.

5        Petitioner's ten-pronged attack is nothing but a transparent attempt to have this Court

6   re-hear and re-evaluate "facts" cherry-picked by the Petitioner.  Ms. Sawyer's Petition

7   demonstrates why the standard to overturn arbitration awards is so high: allowing a losing party

8   to negate an award via a slipshod petition to vacate utterly negates the goal of having an

9   efficient and final alternative to litigation.  *See*, *Catz Am. Co.*, *supra*, 292 F.Supp. at 551

10  (S.D.N.Y. 1968).

11       At the arbitration hearing, Respondents argued to the panel that Ms. Sawyer did not

12  establish her burden of proof for a claim of breach of fiduciary duty.  First, Respondents

13  demonstrated that after August of 2008, any fiduciary relationship which may have existed

14  between Ms. Sawyer and the Respondents ceased to exist.  Second, even if there had been a

15  fiduciary relationship after August of 2008, there was no wrongdoing on the part of the

16  Respondents – that is, no breach.  Third, Ms. Sawyer's losses were not due to any fault on the

17  part of the Respondents, rather her losses were either self-inflicted or the result of advice

18  provided to her by a third-party.

19       There was no manifest disregard of the law.  The arbitration panel had ample evidence

20  to reach its conclusion that Ms. Sawyer's claims – including breach of fiduciary duty – are

21  denied in their entirety, so the Arbitration Award was not completely (or even partially)

22  irrational.

23       Petitioner has presented a one-sided, self-serving version of the facts of this dispute

24  which wrongly purports to be "undisputed" facts.  The "record" Petitioner submits omits

25  hundreds of exhibits and days of testimony in the arbitration.  Indeed, Petitioner submits only

26  those select items by which Petitioner seeks to craft a story line that is at odds with the truth.

27       The Petition's cherry-picked record is so blatantly slanted, incomplete and one-sided, it

28  is as if the petition invites the Respondents to provide their own version of the evidence and

1  undisputed facts.  This, the Respondents will not do.  The law does not credit a slanted

2  incomplete presentation of evidence, or a party's unilateral conclusion as to which facts are

3  "undisputed."  The law also does not require that Respondents supplement Petitioner's

4  incomplete slanted record to oppose the Petition to Vacate.

5       Undisputed facts are found, if they exist at all, in an arbitration award (or in some

6  instances where opposing parties agree upon undisputed facts). The Award here contains no

7  finding of undisputed facts and none were agreed upon by the parties.  Therefore this Court

8  must accept for purposes of this Petition that there are no undisputed facts upon which the

9  Petition to Vacate may rest.

10      At the arbitration, Respondents disputed all of what Petitioner now blithely concludes to

11  be undisputed facts.  That is partly why the arbitration hearing took so long.  Respondents still

12  to this day dispute Petitioner's so-called undisputed facts.

13      This Court cannot accept Petitioner's unilateral representation/characterization of which

14  facts are undisputed, (particularly as the Court is being informed in this Opposition that

15  Respondents dispute those facts).  Furthermore, the Court may not re-weigh the evidence from

16  the arbitration.  *See*, *Coutee*, *supra*, 336 F.3d at 1134; *Pacific Reinsurance*, *supra*, 935 F.2d at

17  1026.

18      As there is no finding of undisputed facts in the Arbitration Award, and Petitioner has

19  not otherwise submitted facts which this Court can accept as undisputed, this vital second

20  prong of the manifest disregard standard fails.  This defect is, in and of itself, sufficient basis

21  for denial of the entire Petition to Vacate.

22      **c.   Petitioner Cannot Support Her Claim that the Award  Constitutes a**
          **Manifest Disregard of the Law By Citing to a Vacated Order**

23

24      Petitioner's counsel twice refers to a court order which he knows is no longer good law

25  and should not be cited as such.  It is conduct that goes beyond mere advocacy, to improper

26  sanctionable behavior.

27      In Petitioner's pre-arbitration brief, there were repeated references to an Order issued by

28  Hon. Robert Benitez in the case, *Strobel v. Morgan Stanley*, USDC Case No. 04cv1069-BEN-

1  BLM [2006 WL 3735739].  That Order had already been vacated, which prompted

2  Respondents to submit a motion to the arbitration panel prior to commencement of the hearing

3  seeking to strike any references by Sawyer to *Strobel*, to preclude reliance on the case, and to

4  have the panel disregard it.  The motion was taken under advisement and ultimately never ruled

5  upon.

6          It is possible that in citing to *Strobel* in the pre-arbitration brief, Petitioner was unaware

7  that Order case was no longer good law, although that is highly unlikely as Petitioner's lawyer

8  was the Plaintiff's lawyer in *Strobel*.  Certainly by the time of filing of the Petition to Vacate

9  Arbitration Award, Petitioner's counsel was well aware that the *Strobel* Order had been

10  vacated, having received Respondents' motion in the arbitration nine months earlier.  Yet

11  Petitioner's memorandum of law in support of the Petition to Vacate nonetheless quotes *Strobel*

12  not once, but twice.  (Dkt. No. 1-1, pp. 3:4-8, 22:20-28, 23:1-3.)

13          Indeed, footnote 6 in Petitioner's Memorandum of Law, while inaccurate, demonstrates

14  that Petitioner's counsel is well aware that he is citing to a vacated Order that is no longer good

15  law.  The footnote attempts to skin the cat, proclaiming:

16          In connection with a settlement and by the parties' stipulation, while the
         original November 16, 2006 Order from Judge Benitez was vacated by
17          stipulation of the parties, the December 11, 2006 Order remains good law.

18  (Dkt. No. 1-1, p. 3, fn 6.)

19          That assertion is false.  The December Order merely amended the November Order to

20  correct typographical errors.  Thus, references to the November Order must necessarily mean

21  "as amended in December to correct typographical errors" as twice noted by Judge Benitez in

22  his December Order, Footnote 1, and his April 24, 2007 Order, footnote 1.

23          Judge Benitez issued an Order on September 20, 2007, vacating the prior substantive

24  orders he had issued, namely the November Order (as amended in December) and the April

25  Order.  The assertion by Petitioner's counsel that the November Order has been vacated, but

26  not the December amendment of that Order (to correct typos), is too clever by half.

27          How can it make sense that the April and November Orders are vacated but not the

28  December Order, which merely corrects typos in the November Order?  Answer—it doesn't

1   and that's certainly not the case.

2       It goes without saying that orders that have been vacated cannot be cited as controlling

3   authority.  *See*, *City of Los Angeles v. Surety Ins. Co.*, 152 Cal.App.3d 16, 22 (1984); *People v.*

4   *Ramirez*, 64 Cal.App.3d 391 (1976).  Petitioner should never have cited *Strobel*, yet has done

5   so repeatedly in the arbitration and again before this Court.  Then again, Petitioner should never

6   have brought this baseless Petition to Vacate in the first place.

### 4.   The Arbitration Panel Did Not Violate 9 U.S.C. § 10(a)(3) By Failing to Allow Petitioner's Attempt to Use Inappropriate Evidence for Impeachment

9       Petitioner's second, alternative, ground for overturning the Arbitration Award is based

10  upon a claim that the arbitration panel, after objection by Respondents' counsel, refused to

11  allow Petitioner to: (1) introduce a set of documents; and (2) question Mr. Legaspy using audio

12  clips from prior testimony in the arbitration hearing.  The Petition to Vacate alleges that the

13  panel's conduct in these two instances calls for vacatur under the FAA provision concerning

14  arbitrator misconduct in refusing to hear evidence pertinent and material to the controversy.

15      These two instances are much ado about nothing and hardly can be said to rise to the

16  level of "affirmative misconduct" by the arbitration panel as to justify vacatur of the arbitration

17  award.

### a.   Petitioner's Phone Records Were Properly Excluded

19      In the arbitration hearing, Petitioner's counsel sought to introduce Ms. Sawyer's

20  notes/telephone records during her direct testimony.  (DJK Decl., ¶33.)  The only problem was

21  that Petitioner had never produced those records to the Respondents.  (DJK Decl., ¶34.)

22  Accordingly, Respondent's counsel objected.  (DJK Decl., ¶37.)

23      At the same point in time in the arbitration hearing, Petitioner also introduced Ms.

24  Sawyer's American Express bills.  (DJK Decl., ¶35.)  As with the phone records sought to be

25  introduced, the American Express bills had never been provided to Respondents.  (DJK Decl.,

26  ¶36.)

27      Under the governing FINRA Code, the parties are required to exchange certain

28  documents that are presumptively discoverable, as well as additional relevant documents

1  requested by one's opponent.  (FINRA Code, Rules 12506, 12507; DJK Decl., ¶38, Exhs. 10,

2  11.)  In addition, FINRA requires what is commonly known as the "Twenty Day Exchange" in

3  which any documents which were not previously provided must be turned over if a party

4  intends to use them in the arbitration.  (FINRA Code, Rule 12514(a); DJK Decl., ¶38, Exh. 12.)

5  The only time a new undisclosed document may be used is in rebuttal.  (FINRA Code, Rule

6  12514(c); DJK Decl., ¶38, Exh. 12.)

7      The arbitration panel went into private executive session, with the proposed exhibits, to

8  consider the propriety of accepting them into evidence even though they were not being

9  submitted in rebuttal.  (DJK Decl., ¶39.)  Obviously, the arbitrators had the opportunity to

10 examine the notes/phone bills.

11     After deliberating, the arbitration panel allowed the admission of Petitioner's Amex

12 bills (even though they had not been produced previously as required), but did not admit

13 Petitioner's phone bills during her case in chief.  (DJK Decl., ¶40.)  What Petitioner fails to

14 mention is that she then went on to testify for well over an hour disputing events in Mr.

15 Legaspy's broker log, and that her testimony was assisted by her American Express bills.  (DJK

16 Decl., ¶41.)

17     More importantly, however, is the fact that the arbitration panel left open the

18 opportunity for the Petitioner to once again attempt to introduce the phone bills as evidence

19 during rebuttal.  (DJK Decl., ¶40.)  Petitioner never attempted to do so.  (DJK Decl., ¶42.)

20     Whether the petitioner was content with her lengthy testimony, and the fact that the

21 panel actually received and reviewed the phone bills, or whether the Petitioner simply forgot,

22 doesn't matter.  The fact remains that the Petitioner was not improperly denied the opportunity

23 to introduce evidence.  Rather, the Petitioner was prevented from violating standard FINRA

24 rules and given the opportunity to introduce the documents in a proper fashion later on.

25     The arbitrators did not engage in **<u>any</u>** misconduct, let alone misconduct so great as to

26 merit vacating the Arbitration Award.

27

28

### b. <u>Refusal to Allow Cross-Examination Using Audio Clips From Earlier Arbitration Testimony Was Appropriate</u>

Petitioner's other assertion that she was improperly denied an opportunity to introduce evidence would be comical, except for the fact that Respondents and this Court must seriously address it.

The allegedly improper denial was the ruling by the arbitration panel that it would not allow Petitioner's counsel to re-introduce prior arbitration testimony in a further examination of the same witness. Petitioner's counsel, in his second examination of respondent, Mr. Legaspy, sought to use selected portions of audio recordings of Mr. Legaspy's testimony earlier in the arbitration. The three arbitrators– who already heard the earlier testimony sought to be re-introduced – rightly denied the request. Selective use of audio can be – and in fact ultimately was in Petitioner's closing – used to mislead. Moreover, as a practical matter, when would it end? It could go on indefinitely in a circular fashion, re-introducing prior testimony as cross-examination, re-direct, etc.

What is clear in all this is that Petitioner was in effect denied **<u>nothing</u>**. The prior testimony was already heard by the panel who were able to consider and weigh it. Denying Petitioner's request to revisit old ground in a highly suspect way was not arbitrator misconduct as it was well within the panel's authority, was a correct ruling, and caused no harm to the Petitioner.

### D. <u>The Petition to Vacate is Defective as a Matter of Procedure</u>

Ms. Sawyer failed to provide a complete record of the arbitration hearing which, alone, is grounds to deny the Petition to Vacate Arbitration Award. In *Lew Lieberman & Co. v. Randle*, 85 F. Supp. 2d 123, 126 (E.D.N.Y. 2000) a party who challenged a NASD arbitration award attached the award itself along with a self-serving summary of the testimony presented at the arbitration hearing, rather than an official transcript, as support for the petition to vacate. Due to this incomplete and self-serving evidence offered, the court in *Lew Lieberman* denied the petition to vacate. *Id.*, at 126.

Similarly, in *Green v. Progressive Asset Management, Inc.*, 2000 U.S. Dist. 2000 WL 1528276 (S.D.N.Y. 2000), a party who challenged a NASD arbitration award chose to attach

1    only selected pages of the transcript of the arbitration hearing which is precisely what Ms.

2    Sawyer's petition does here.   In *Green* the court denied the Petition to Vacate Arbitration

3    Award, in large measure because the party challenging the award failed to carry the burden of

4    proof in offering only a select portion of the hearing transcript.

5           In support of the Petition to Vacate, Ms Sawyer includes 33 "exhibits" comprised of:

6           (1)    Mere "excerpts" of testimony (Exhibits 1, 17, 18, 24, 27, 28, 29 and 32);

7           (2)    Laws, rules and regulations (Exhibits 8, 9, 16, and 33);

8           (3)    The vacated *Strobel* Order (Exhibit 7);

9           (4)    A document not in evidence (Exhibit 10);

10          (5)    Sixteen Exhibits Petitioner submitted as Claimant in the arbitration hearing

11                 (Exhibits 2, 3, 4, 5, 6, 11, 12, 13, 14, 19, 20, 22, 23, 25, 26 and 30); and

12          (6)    Two exhibits Respondents submitted in the arbitration hearing (Exhibits 21 and

13                 31).

14          It is self-evident that Petitioner offers only a unilaterally selected, slanted "record."  Not

15   only did Petitioner fail to attach a complete record of the arbitration hearing, meaning all the

16   testimony and all the exhibits, she did not even attach a court reporter's official transcript.

17   Rather, Petitioner asks this Court to vacate an arbitration award based upon select portions of

18   an unofficial transcript prepared not by a certified court-reporter, but rather, a "transcriber."

19          Such a submission does not constitute adequate support for Ms. Sawyer's Petition in

20   which she bears the substantial burden of proof.

21          **IV.     RESPONDENTS' CROSS-PETITION SHOULD BE CONFIRMED**

22          Because Ms. Sawyer has failed to prove any statutory grounds for vacatur under the

23   FAA and because the arbitration panel did not act in manifest disregard of the law or fashion a

24   completely irrational award, this Court must deny Ms. Sawyer's Petition and instead affirm

25   Respondents' Cross-Petition and issue a judgment on the Award in favor of Respondents and

26   against Ms. Sawyer.  Cal. Code Civ. Pro. §286; 9 U.S.C. § 9; *Rosensweig*, *supra*, 494 F.3d

27   1333; *French*, *supra*, 784 F.2d at 906.

28

1    In the case, *Barnes v. Logan*, 122 F.3d 820 (9th Cir. 1997), the Ninth Circuit held that

2    an arbitration award should be confirmed unless the arbitrators could not have rendered the

3    same award without manifestly disregarding the governing law. *Id*., at 821-822; *see also*,

4    *Coutee*, *supra*. Since the Petitioner has not demonstrated that the Arbitration Award was the

5    result of the arbitrators manifestly disregarding the law, the Arbitration Award must be

6    confirmed per *Barnes v. Logan*.

7                              **V.    CONCLUSION**

8    None of the four grounds for vacatur set forth in the Federal Arbitration Act have been

9    proven. Petitioner has not proven that: (1) "the award was procured by corruption, fraud, or

10   undue means"; (2) "there was evidence partiality or corruption in the arbitrators, or either of

11   them"; (3) "the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent

12   and material to the controversy . . .or of any other misbehavior by which the rights of any party

13   have been prejudiced"; (4) "the arbitrators exceeded their powers, or so imperfectly executed

14   them that a mutual, final, and definite award upon the subject matter submitted was not made."

15   9.U.S.C.A. § 10(a).

16   The arbitrators did not exceed their powers or imperfectly execute them and the Petition

17   does not prove otherwise. The Petition to Vacate does not come close to proving that the

18   Arbitration Award was the product of manifest disregard of the law or was completely

19   irrational. The Petition fails to present "undisputed" facts and does not prove that the

20   arbitrators were aware of the law and intentionally disregarded it.

21   Petitioner's secondary argument – that the arbitrators were guilty of misconduct in

22   refusing to hear evidence on two occasions – has no support in fact, and does not afford a basis

23   for vacating the Arbitration Award. Under the FAA and the body of Federal and California

24   law, Ms. Sawyer's Petition must be denied and the arbitration award must be confirmed.

25   ///

26   ///

27   ///

28   ///

1       For the foregoing reasons, Respondents requests that the Court deny Petitioner's

2   Petition and instead grant Respondents' Cross-Petition to Confirm the Arbitration Award,

3   entering Judgment in the form lodged concurrently herewith.

4   Dated:  September 30, 2011                    DILLINGHAM & MURPHY, LLP
                                                  DENNIS J. KELLY
5                                                 BROOKE S. PURCELL

6

7                                           By:   /s/Dennis J. Kelly
                                                  _____
8                                                 Attorneys for Respondents
                                                  HORWITZ & ASSOCIATES, INC.
9                                                 and CARLOS LEGASPY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28