# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M. MICHELE SAWYER,<br><br>                            Plaintiff,<br>vs.<br>HORWITZ & ASSOCIATES, INC. and CARLOS LEGASPY,<br><br>                           Defendant. | CASE NO. 11-CV-1604-LAB-JMA<br><br>**ORDER CONFIRMING ARBITRATION AWARD** |

Michele Sawyer challenges an arbitration award entered against her by a panel of the Financial Industry Regulatory Authority. Defendants are a brokerage firm and one of its representatives who, Sawyer alleges, lost almost all of the $1,805,085 that she entrusted to their care through a series of ill-advised (and unauthorized) naked put options. Sawyer brought eight claims against the Defendants, alleging violations of the Securities Exchange Act as well as California law. The panel, in a 2-1 decision, denied all claims in their entirety.

**I.    Legal Standard**

The Federal Arbitration Act provides that an arbitration award may be vacated

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the

- 1 -

> controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). With respect to (4), "'arbitrators exceed their powers . . . not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law.'" *Schoenduve Corp. v Lucent Technologies, Inc.*, 442 F.3d 727, 731 (9th Cir. 2006) (quoting *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 997 (9th Cir. 2003)).

A manifest disregard of the law is indicated when it's clear that the arbitrators recognized the applicable law and then ignored it. *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009). "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Id.* (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004)). Moreover, the law has to be well defined, explicit, and clearly applicable. *Carter v. Health Net of California, Inc.*, 374 F.3d 830, 838 (9th Cir. 2004). A legal conclusion that is merely erroneous, or rests on a misinterpretation of law, must be left alone. *Kyocera Corp.*, 341 F.3d at 994; *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986). Absent a written opinion or some other indication of the arbitrators' reasoning, "it is all but impossible to determine whether they acted with manifest disregard for the law." *Id.* (quoting *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000)).

The Ninth Circuit has not elaborated at length on the meaning of "completely irrational," *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1288 (9th Cir. 2009), but suffice it to say that neither unsubstantiated factual findings nor erroneous factual findings justify vacating an arbitral award.[1] *Id.* at 994; *Merrill* Lynch, 784 F.2d at 906.

---

[1] The Ninth Circuit *has* developed the meaning of "completely irrational" in the context of arbitrations that arise out of contract disputes. In this context, an award is irrational where it "fails to draw its essence from the agreement." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010) (quoting *Comedy Club*, 553 F.3d at 1288). *See also Bosack*, 586 F.3d at 1106. Because Sawyer's dispute with Defendants doesn't arise out of a contract, this standard isn't helpful in this case.

- 2 -

Indeed, "[w]hether or not the panel's findings are supported by the evidence in the record is beyond the scope of . . . review." *Bosack*, 586 F.3d at 1105.  In other words, this Court has no authority to re-weigh the evidence presented to an arbitration panel and ask whether it would have reached the same decision. *Id*. *See also Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003); *Local Joint Executive Bd. of Las Vegas v. Riverboat Casino, Inc.*, 817 F.2d 524, 527 (9th Cir. 1987).  "Broad judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Kyocera Corp.*, 341 F.3d at 997–98.[2]

## II.  Discussion

Arbitrators have no obligation to explain their decisions. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992).  When they don't offer any explanation, however, the Court finds itself in a difficult position.  Even though its review is a deferential one, and the Court doesn't even ask whether the panel's findings are supported by the record, it helps to have *something* to go on.  This is especially true when, as here, a petitioner doesn't focus her objections to the panel's decision and instead objects to it wholesale.[3]  Indeed, Sawyer's motion has all the substance of a brief for the panel

---

[2] Defendants take the bizarre position that the award is not reviewable *at all* because, in their words (and with their emphasis), "FINRA Rule 12904 states: 'Unless the applicable law directs otherwise, *all awards rendered under the Code are final and are not subject to review or appeal*.'" (Opp'n Br. at 7.)  They dodge the words "Unless the applicable law directs otherwise."  The applicable law, as stated by the Court (and recognized by the Defendants) is that FINRA awards are reviewable under the standards set forth in 9 U.S.C. § 10(a) and the Ninth Circuit's interpretation of those standards.  Even more surprising about Defendants' argument is that it follows a section of their brief under the heading "The FAA Strongly Favors Confirmation of Arbitration Awards." (Opp'n Br. at 5.)  That's true.  But it's false to say, as Defendants do, that "pursuant to FINRA rules and the Submission Agreements signed by all parties to the action, the Arbitration Award that FINRA issued . . . is final and should not be subject to review or appeal." (Opp'n Br. at 8.)

[3] The Court has read several decisions reviewing FINRA awards in which the court was at least able to focus the petitioner's objection on a particular holding, or particular holdings, of the arbitral, and thereby focus its own analysis. *See, e.g.*, *Cortina v. Citigroup Global Markets*, 2011 WL 3654496 (S.D. Cal. Aug. 19, 2011) (considering several specific arguments for vacating an arbitration award); *Arora v. TD Ameritrade, Inc.*, 2010 WL 2925178 (N.D. Cal. July 26, 2010) (considering four specific, procedural challenges to the award); *Wells Fargo Advisors, LLC v. Shaffer*, 2011 WL 2669479 (N.D. Cal. July 7, 2011) (considering whether arbitral's findings that a promisory note was unconscionable, and that

1  adjudicating her claims for the first time. Over the course of ten pages under the heading
2  "The Undisputed Evidence Proved Legaspy Breached His Fiduciary Duties To Claimant,"
3  Sawyer essentially tries to make her case all over again, articulating four different points of
4  law and making six different points about what, in her view, the undisputed evidence
5  established.

### A. Denial of Motion for Expungement

Sawyer's first argument for vacatur is that the panel's refusal to expunge Sawyer's claims against Defendants necessarily means the claims were meritorious. That's simply not true.

At the conclusion of the evidence, Defendants moved for expungement under FINRA Rule 2080(b)(1)(A) and 2080(b)(1)(C). (Lendrum Decl., Ex. 17.) The former allows for expungement when "the claim, allegation or information is factually impossible or clearly erroneous." The latter allows for expungement when "the claim, allegation or information is false."[4] Without any kind of explanation, the panel denied the request: "Respondent

---

a particular form could be the basis of a defamation claim, were made in manifest disregard of the law); and *Mid-Ohio Securities Corp. v. The Estate of Lawrence D. Burns*, 790 F.Supp.2d 1263 (D. Nev. 2011) (affirming arbitral's decision that plaintiff had standing and that her claims were eligible for arbitration).

[4] The Court trusts the parties that these are in fact the Rules, although the full text of Rule 2080 leaves the Court somewhat confused. A fuller reading of Rule 2080 suggests that subsections (b)(1)(A) and (b)(1)(C) aren't exactly bases on which expungement may be sought and granted.

Rather, Rule 2080 requires that "parties petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents." Rule 2080(b). FINRA may waive this obligation, however, if it determines that the expungement relief is based on a judicial or arbitral finding that: (A) the claim, allegation or information is factually impossible or clearly erroneous; [or] (C) the claim, allegation or information is false."

That is the context for subsections (b)(1)(A) and (b)(1)(C). They appear *not* to be freestanding bases on which expungement may be granted, but rather the bases for expungement that potentially relieve parties seeking expungement from the obligation to name FINRA as a party and serve it with papers.

That said, the Court is confident that subsections (b)(1)(A) and (b)(1)(C) are also regarded as expungement standards, plain and simple. Defendants have presented a list of frequent asked questions with respect to Rule 2080, and one of those is instructive here: "Do the standards above apply to court proceedings in addition to arbitrations? Yes . . . . FINRA will use the Rule 2080 standards in determining whether to oppose the expungement request and will recommend that the court use the standards *when considering the request for expungement*." (Kelly Decl., Ex. 9, Q. 6.)

- 4 -

Legaspy's request for expungement is denied." (Lendrum Decl., Ex. 9.)

What does that mean, though? Sawyer interprets it as a finding that her claims were not false, given that *that* is the basis for expungement under Rule 2080(b)(1)(C). But Defendants *also* moved for expungement on the ground that Sawyer's claims were factually impossible or clearly erroneous, the basis for expungement under Rule 2080(b)(1)(A). It is entirely possible that the panel denied the motion to expunge because, even though it found Sawyers' claims to be false, it did not find them to be factually impossible or clearly erroneous.[5] Moreover, Sawyer's argument forgets what the Court is looking for here: a decision that is completely irrational or exhibits a manifest disregard of law. *Schoenduve*, 442 F.3d at 731. Sawyer cites no authority, and the Court does not believe any exists, for the proposition that it is completely irrational, or manifestly unlawful, for an arbitral to refuse to expunge claims that it nonetheless finds are not meritorious. Common intuition actually serves up the opposite view: that it is completely logical to find that a party has not technically violated the law but nonetheless conducted itself in such a manner that the public would be well-served to know.

## B.  Peripheral Arguments

Sawyer's decision to lead with the argument that the panel's refusal to expunge her claims means the panel found them "true" doesn't bode well for her petition. In fact, it makes the Court that much more skeptical of her other arguments for vacatur. The Court pauses here to consider other arguments Sawyer makes that, while peripheral in her petition, nonetheless damage its credibility.

### 1.  Sanctioning of Legaspy

Sawyer repeatedly references the fact that Horwitz & Associates sanctioned Legaspy for the manner in which he handled her account, presumably to argue that the panel's

---

[5] Sawyer is probably right to argue that FINRA's account of how it determined the standards for expungement, *see* Kelly, Decl., Ex. 9, Q. 18), merely explains the rationale behind Rule 2080 and does not expose some heightened standard for expungement. Still, it is instructive that the animating purpose behind the expungement standards is the preservation of information with "meaningful regulatory or investor protection value." This lends additional plausibility to the determination of the arbitral that while Sawyer's claims failed on their merits, they should not be expunged.

- 5 -

findings cut against those of Legaspy's own employer. (*See* Br. at 9.) For example, in her reply brief she writes:

> At the time of the events in question, Ms. Sawyer was a single mother earning less than $10,000 per year and she expressly rejected "speculation" and "aggressive growth" as her account investment objectives. Under these circumstances, when an investment professional places the overwhelming majority of the client's net worth into highly speculative and volatile naked put options and loses over a million dollars in less than six weeks, something is wrong. This is exactly what Legaspy's own employer concluded when it "sanctioned" Legaspy $200,000 for unethical conduct in Ms. Sawyer's account.

(Reply Br. at 10.) This is a misrepresentation of the letter sanctioning Legaspy. He was not sanctioned for his actual investment practices, which are the substance of Sawyer's claims against him, but for violating FINRA rules. Here is what the letter said:

> Finally, another instance of an unreported complaint and reimbursement came to light in the Sawyer arbitration claim where you reimbursed Sawyer for interest and personally purchased a bond from her account to give her the means to meet a margin call.

(Lendrum Decl., Ex. 5.) Sawyer's core grievance against Legaspy is that he breached his fiduciary duties to her by investing her money as she specifically directed him *not* to. That Legaspy reimbursed her for interest and gave her money to meet a margin call—violations of *FINRA* rules—says little about whether that core grievance is meritorious.

### 2. Judge Frosburg

The panel's decision was not unanimous. Its award noted that "Arbitrator E. Milton Frosburg agrees with the Panel's finding that Respondent Carlos Javier Legaspy would not be entitled to expungement relief as per FINRA Rule 12805 and Rule 2080 and dissents as to the Panel's decision regarding liability and damages." (Lendrum Decl., Ex. 9.) Sawyer makes far too much of Judge Frosburg's dissent. Indeed, she comes rather close to suggesting that Judge Frosburg's dissent, in and of itself, shows that the panel's decision cannot possibly be justified:

> [I]ndependent of the fact that Panel unanimously found that Ms. Sawyer's claims were true, the Majority's decision to deny Ms. Sawyer's claims in their entirety simply cannot be reconciled with the undisputed evidence and, as Judge Frosburg concluded, the evidence proves that Respondents are liable for the harm

- 6 -

caused to Petitioner. (Br. at 13.) There are two problems, at least, with Sawyer's reliance on the mere fact that the panel's award was not unanimous. The first is that the extent of Judge Frosburg's dissent is completely unclear. Maybe he believed Sawyer should prevail on all of her claims and receive from Defendants the $2 million she seeks, but maybe he believed one of Sawyer's claims had merit and she should receive only some nominal damage award. The Court has no idea. All that is clear is that Judge Frosburg disagreed with the majority's determination that Sawyer's claims should be denied in their entirety and that she should receive no damages. Second, there is *nothing* about Judge Frosburg's dissent that entitles it to more weight than the majority's opinion. It would be one thing if Judge Frosburg, outraged at the majority's opinion, offered specific bases for his dissent, but all the Court has to go on is the majority's conclusion that "Claimant's claims are denied in their entirety" and the fact that Judge Frosburg "dissents as to the Panel's decision regarding liability and damages." (Lendrum Decl., Ex. 9.) Those opinions are equally unilluminating.

### 3. Presentation of the Record

Defendants take Sawyer to task for not presenting a complete record of the arbitration hearing, and the Court has to agree. As presented, Sawyer's petition appears to be completely self-serving. The record she provides is plainly edited to provide the Court with what she wants it to see, which confuses the Court's role in reviewing an arbitration award with the arbitral's role in resolving her claims in the first instance. The arbitral denied that her claims were righteous, and the point now isn't to put on the same case before this Court to see what it thinks. At least one court has raised the possibility that the simple failure to provide a complete record of an arbitration is grounds for rejecting a petition to vacate an arbitration award. *See Lew Lieberbaum & Co., Inc. v. Randle*, 85 F.Supp.2d 123, 126 (E.D.N.Y. 2000) ("Other than the panel's award, the Petitioners have only supplied the Court with Petitioner's counsel's self-serving summary of the testimony in his supporting affidavit. The lack of a sufficiently complete record alone is enough to require rejection of the Petitioner's position. It is the Petitioner's burden to demonstrate manifest disregard of the

- 7 -

law, and the failure to offer the entire record leaves the Court unable to exclude the possibility that the award is supported by evidence that the Petitioner has not supplied.").

### C. "The Undisputed Evidence"

Sawyer's second argument for vacatur, which the Court alluded to above, is that the undisputed evidence shows Legaspy breached his fiduciary duties to her. The argument could be more precise. Is Sawyer arguing that the arbitrators exhibited a manifest disregard of the law, or that their decision was completely irrational on the facts presented? Both, actually.

#### 1. Manifest Disregard for the Law

In several places Sawyer attempts to rebut *legal* arguments made by the Defendants during the arbitration, followed by the hypothetical proposition that *if* the arbitrators accepted those arguments, they would have done so in manifest disregard of the law. It is easiest to simply quote from Sawyer's opening brief:

> Accordingly, Respondents' argument that Claimant is not entitled to recover for the harm caused by Legaspy's unsuitable trades because the losses were caused by "historic market conditions" is contrary to the law and if accepted would be in manifest disregard for the law." (Br. at 20.)

> Finally, Respondents argued that Ms. Sawyer's "losses" had to be offset against gains from interest paid on her bonds in years before the three options were sold. This too is an invalid defense . . . . Given that Respondents acknowledged that suitability is a transaction specific analysis, crediting Respondents with income from other investments long before the three options were sold would be in manifest disregard of the law. (Br. at 21–22.)

> Respondents argued that Legaspy's strategy was suitable because Sawyer was wealthy and had employed other investment managers in the past, including one who purchased a 'hedge fund' for Petitioner . . . . As in *Strobel*, here, Respondents' "defense" was that because Ms. Sawyer had prior stock market experience and accumulated $2.2 million in assets, Respondents had a license to speculate with Ms. Sawyer's hard life savings. Just as in *Strobel*, this defense is invalid and if accepted by the majority would be in manifest disregard for the law. (Br. at 22–23.)

> Finally, Resondents argued that bonds purchased on behalf of Ms. Sawyer balanced out the risk of the "highly speculative" options, such that on the whole the *account* was suitable . . . . Thus, if this defense was accepted, it too would have been in

- 8 -

manifest disregard for the law. (Br. at 23.)

These arguments all miss the point. An arbitral's award isn't in manifest disregard of the law unless it is clear from the record that the arbitral recognized the applicable law and then ignored it. *Bosack*, 586 F.3d at 1104. It is also all but impossible to determine whether arbitrators have acted with manifest disregard for the law where they don't explain their decision (which they have no obligation to do). *Id.* The panel's decision isn't in manifest disregard of the law just because the *Defendants*, according to Sawyer, advanced baseless legal arguments.

The Court should also address Sawyer's claim that *Duffy v. Cavalier* is controlling case law, that the panel knew it, and that the panel disregarded the case. (*See* Br. at 13–14; Reply Br. at 5–6.) In both of her briefs, Sawyer includes the same excerpt from *Duffy* and bolds the same language:

> [W]here an apparently unsophisticated investor expresses a desire to engage in speculative investments with the objective of making large profits, the stockbroker cannot simply carry out the customer's wishes. Rather, the **stockbroker has a fiduciary duty (1) to ascertain that the investor understands the investment risks in light of his or her actual financial situation; (2) to inform the customer that no speculative investments are suitable** if the customer persists in wanting to engage in such speculative transactions without the stockbroker's being persuaded that the customer is able to bear the financial risks involved; and (3) **to refrain completely from soliciting the customer's purchase of any speculative securities** which the stockbrokers considers to be beyond the customer's risk threshold.

215 Cal.App.3d 1517, 1532 (Cal. Ct. App. 1989). There are a number of problems here. First, the actual duty that Sawyer mines from *Duffy*—the bolded language—isn't absolute or free-floating. The excerpt itself shows this, because it prefaces the stated duties with two conditionals: *If* an investor appears to be unsophisticated, and *if* she wants to invest speculatively to reap large returns, *then* the stockbroker has the duties mentioned. But one of these prerequisite conditions isn't present here, namely the express desire to invest speculatively. Actually, the *absence* of that condition is critical to Sawyer's claims. She writes:

> In fact, Ms. Sawyer explicitly rejected "aggressive growth" and

- 9 -

> "speculation" as investment objectives. Moreover, Horwitz' own Compliance Officer, Michael Gregory, admitted that neither "speculation" nor "aggressive growth" were secondary investment objectives for Ms. Sawyer's accounts.

(Br. at 15.) Taking Sawyer at her word, then, and assuming she had no interest in risky, high-reward investments, *Duffy* doesn't do for her what she needs it to.

Sawyer also suggests that Defendants conceded in their post-arbitration brief that *Duffy* was "controlling California case law," the implication being that the panel obviously knew of the case and the law it stands for. (Br. at 14.) Sawyer cites to page 3 of that brief, however, on which the Court sees no mention of *Duffy*. (Lendrum Decl., Ex. 21.) In her reply brief, Sawyer cites to page 17 of post-arbitration brief for the Defendants' concession as to the controlling law, but again the Court doesn't see what Sawyer claims is there.[6] (Lendrum Decl., Ex. 21.) Here is what Defendants *do* concede, as far as *Duffy* is concerned: "Under California law, there is a fiduciary duty in the broker-customer relationship." (Opp'n Br. at 14.) That's a completely uncontroversial proposition, obviously, and at its level of generality it gets Sawyer nowhere. The question here isn't whether Defendants had some fiduciary duty to Sawyer, but what, on the facts of this case, the scope of their fiduciary duties actually were, and whether those duties were breached. *Duffy* confirms this:

> The question is not whether there is a fiduciary duty, which there is in every broker-customer relationship; rather, it is the *scope or extent* of the fiduciary obligation, which depends on the facts of the case.

215 Cal.App.3d 1517. Sawyer has to do far, far more than simply cite *Duffy* as she has to show that the panel's award was in manifest disregard of the law. And having reviewed the record and Sawyer's pleadings, the Court finds Sawyer has not made that showing.

### 2. "Completely Irrational"

Sawyer assembles at least five "facts" that she asserts were undisputed and essentially require the conclusion that Legaspy breached his fiduciary duties to her: (1) her

---

[6] Perhaps the paginations in the documents presented by Sawyer to the Court are off. She says in her reply brief that she presented controlling law to the panel during her closing argument, citing pages 39 and 43 of Exhibit 19 (a PowerPoint presentation). (Reply Br. at 5.) Those pages don't contain a single case, or even a single legal principle.

- 10 -

investment objective was simply "growth," not "aggressive growth" or "speculation."; (2) Legaspy solicited and placed the objectionable transactions; (3) Legaspy admitted his investment attack was speculative and unsuitable for Sawyer; (4) Legaspy failed to learn about Sawyer's actual financial circumstances, or else he chose to ignore what he did learn; and (5) Legaspy admitted he falsified Sawyer's options experience to obtain approval to trade options in her account. (Br. at 15–19.)

Here, Sawyer is transparently re-arguing her claims before the Court in a manner that is inappropriate under the prevailing standards for review of an arbitral's decision. It is clear, with even a cursory review of the record and Defendants' pleadings before the Court, that there is another side to this case. Defendants deny that Legaspy even had a fiduciary duty to Sawyer when the transactions in question took place, assuming there was such a duty they deny that it was breached, and they deny that any of Sawyer's losses were caused by Legaspy. The panel heard this matter for 14 days, over which Sawyer and Defendants put on witnesses and presented testimony favorable to their arguments. Sawyer has failed to show that it was completely irrational of the panel to reach the conclusion that it did.

### D.     Refusal To Hear Evidence

Sawyer's third and final argument for vacatur is that the panel refused to hear pertinent and material evidence that was favorable to her case. *See* 9 U.S.C. § 10(a)(3). Not only must Sawyer show that the evidence at issue was pertinent and material, she must also show prejudice. *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1174 (9th Cir. 2010). The Supreme Court has suggested—and Sawyer concedes—that the refusal must demonstrate bad faith or be "so gross as to amount to affirmative misconduct." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

The first piece of evidence Sawyer argues was wrongfully excluded was her own telephone records, which had not been produced in discovery, and which she attempted to introduce in her case in chief to rebut Legaspy's account of when he spoke with Sawyer. The Court has read the relevant portion of the hearing transcript. (Lendrum Decl., Ex. 28 at 93–97.) When counsel for Ms. Sawyer initially attempted to introduce the documents,

counsel for Defendants objected:

> Mr. Kelly: Mr. Chairman, these were not produced in discovery. This is not rebuttal testimony. This is plaintiff's case in chief.
>
> Mr. Cohn: It is . . . .
>
> Mr. Lendrum: May I respond, Mr. Chairman?
>
> Mr. Cohn: Please.
>
> Mr. Lendrum: This is certainly a document that is in rebuttal to the testimony that this gentleman gave and testified repeatedly under oath as to this broker log.
>
> Mr. Cohn: You are presenting your case in chief, not rebuttal to any witnesses you called in as an adverse witness, but these documents existed and were requested in the discovery process. They should have been turned over.

After a brief recess and some subsequent discussion, much of it heated, the panel went off the record into an executive session. It decided to exclude the records. At that point, counsel for Ms. Sawyer asked that the exclusion be without prejudice to introducing the records in rebuttal. Mr. Cohn replied, "We'll address it at that point. Very well." The record clearly shows that the panel heard argument on the issue (punctuated by intense bickering between counsel), gave thought to it, and had a coherent reason for excluding the evidence. Sawyer does not come close to showing that the decision was "so gross as to amount to affirmative misconduct."

Sawyer also complains that during her counsel's cross-examination of Legaspy following Defendants' direct, he was prevented from introducing Legaspy's earlier testimony to impeach him. (*See* Lendrum Decl., Ex. 27 at 166–68.) This complaint borders on frivolous. The panel did not prevent Sawyer from introducing pertinent, material testimony of Legaspy. It simply denied Sawyer's counsel the opportunity to remind the panel of testimony it had already heard because it was beyond the scope of a proper cross-examination. Morever, the panel invited Sawyer's counsel to make the argument in his closing: "Mr. Cohn: Yeah, I think at this point, let's address the cross examination for this witness's testimony today. And you can bring that up in argument." There was no prejudice here, nor was there affirmative misconduct.

**III.     Conclusion**

For the reasons given above, Sawyer's petition to vacate the arbitration award against her is **DENIED**.  Defendants' cross-motion to confirm the arbitration award is **GRANTED**.

**IT IS SO ORDERED**.

DATED:  January 30, 2012

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge